**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11913
Non-Argument Calendar
_____

GEORGIA SECOND AMENDMENT, INC.,
THOMAS STEPHENS,

*Plaintiffs-Appellants,*

*versus*

GOVERNOR OF GEORGIA,
MICHAEL CHASTAIN,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 2:23-cv-00024-RWS
_____

Before ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges.

PER CURIAM:

Georgia Second Amendment, Inc., and Thomas Stephens sued Georgia Governor Brian Kemp and probate judge Michael Chastain challenging a Georgia law that generally prohibits individuals under the age of 21 from carrying firearms in public.[1] *See* O.C.G.A. §§ 16-11-126; 16-11-129(b)(2)(A). They alleged that this prohibition, when applied to individuals between the ages of 18 and 20, violates the Second Amendment. They sought a preliminary injunction to bar its enforcement.

The district court denied the motion for a preliminary injunction, concluding that the organization and Stephens failed to establish a substantial likelihood of success on the merits. In the same order, the court also dismissed their complaint, concluding that it failed to state a claim for relief. In its order, the district court relied on a decision of a panel of this Court holding that a Florida law prohibiting the purchase of firearms by individuals between the ages of 18 and 20 did not violate the Second Amendment. The organization and Stephens challenge the district court's order on appeal.

While this appeal was pending, we vacated the panel decision upon which the district court relied and reheard that appeal sitting en banc. *See Nat'l Rifle Assoc. v. Bondi*, 133 F.4th 1108, 1113 (11th Cir. 2025) (en banc), *cert. denied sub nom, NRA, Inc. v. Glass*, No. 24-1185, 2026 WL 1871313 (June 30, 2026). In our en banc decision, to determine whether Florida's prohibition on the purchase

---

[1] In a previous opinion, we described in greater detail Georgia's firearms licensing scheme. *See Baughcum v. Jackson*, 92 F.4th 1024, 1029 (11th Cir. 2024).

of firearms by individuals between the ages of 18 and 20 was constitutional, we considered whether the challenged regulation "fit[] within" and was "consistent with the principles that underpin" our nation's "historical tradition of firearm regulation." *Id.* at 1114 (quoting *United States v. Rahimi*, 602 U.S. 680, 691–92 (2024)). We stated that "[t]his inquiry turns on 'why and how' the regulation burdens the right to keep and bear arms." *Id.* (quoting *Rahimi*, 602 U.S. at 692) (citation modified). We explained that to answer the "why" inquiry, a court must examine whether the modern regulation "addresses the same problem as historical restrictions." *Id.* And for the "how" inquiry, a court must ask whether the modern regulation "is similar to" the historical restrictions "in how it burdens the right" to keep and bear arms. *Id.* (citation modified). We emphasized that for purposes of this analysis the modern "regulation need 'not precisely match its historical precursors" but still must be "'analogous enough' to those precursors to 'comport with the principles underlying the Second Amendment.'" *Id.* at 1115 (quoting *Rahimi*, 602 U.S. at 692).

Applying this framework, we concluded that Florida's prohibition barring the sale of firearms to individuals between the ages of 18 and 20 was constitutional. We examined our nation's historical tradition of regulating the purchase of firearms among this age group. We explained that at our nation's Founding, a person was considered an infant or minor in the eyes of the law until reaching age 21; this classification was based on a belief that individuals under the age of 21 "lacked the reason and judgment necessary to be trusted with legal rights." *Id.* at 1117. We further observed that at

the time of the Founding minors "generally lacked the capacity to contract" and contracts they entered "for the purchase of personal property" were "voidable." *Id.* at 1118 (citation modified). Based on our historical survey, we concluded that the law of the Founding era generally "restricted the purchase of firearms by minors" and that these restrictions carried forward "into the nineteenth century in the form of statutory prohibitions." *Id.* at 1122.[2]

We held that Florida's prohibition on the purchase of fire-arms by individuals between the ages of 18 and 20 was "consistent with our regulatory tradition in why and how it burdens the right of minors to keep and bear arms." *Id.* We determined that the "Florida law has the same 'why' as Founding-era limitations: individuals under the age of 21 have not reached the age of reason and lack the judgment and discretion to purchase firearms responsibly." *Id.* at 1122–23. And we concluded that Florida's prohibition was "also consistent with our historical tradition in 'how' it burdens the right" to keep and bear arms by "prohibit[ing] purchase"

---

[2] We focused our historical analysis primarily on the time of the Founding. *See Nat'l Rifle Assoc.*, 133 F.4th at 1116. But, recognizing that post-ratification history could be relevant, we also considered laws on the books through the end of the nineteenth century. *See id.* at 1121. We expressly did not decide what approach a court should take if there was a "conflict between the Founding-era and Reconstruction-era understandings of the right" at issue. *Id.* at 1116–17. We explained that this question was not before us because the laws of both the Founding and Reconstruction eras "restricted the purchase of firearms by minors." *Id.*

of firearms by individuals under the age of 21 "but preserv[ing] access to firearms with parental consent." *Id.* at 1123.

Also while this appeal was pending, the Supreme Court issued its decision in *Wolford v. Lopez*, No. 24-1046, 2026 WL 1825723 (June 25, 2026). In *Wolford*, the Supreme Court held that a Hawaii statute banning concealed carry permit holders from carrying handguns on private property open to the public without the property owner's express authorization violated the Second Amendment. Hawaii primarily argued that its statute was constitutional because there were "analogous colonial and early state laws." *Id.* at *12. The Supreme Court disagreed. It reviewed the historical laws on which Hawaii relied and concluded that they were "vastly different" because most of them "prohibited unauthorized hunting of deer or small game on someone else's private property." *Id.* The Court concluded that the gap between these laws and Hawaii's statute was "too wide" to satisfy the Second Amendment. *Id.* at *13.

When it denied the motion for a preliminary injunction and dismissed the case before us today, the district court did not have the benefit of the Supreme Court's decision in *Wolford* or our en banc decision in *National Rifle Association*. We therefore VACATE the district court's order denying the motion for preliminary injunction and dismissing the case and REMAND so that the district court can consider these intervening decisions in the first instance. *See Thomas v. Att'y Gen., Fla.*, 795 F.3d 1286, 1294 (11th Cir. 2015) (remanding for district court to consider the effect of intervening decisions in the first instance).

6                          Opinion of the Court                     23-11913

**VACATED and REMANDED.**